### The Mayor and City Council of Baltimore *vs.* George M. Gill, and others.

*Construction of Section 7 of Article 11 of the Constitution of 1867—Ordinance in aid of the Western Maryland Rail Road—Injunction at suit of Taxpayers—Attorney-General.*

The ordinance of the Mayor and City Council of Baltimore, entitled "An Ordinance to provide for raising the sum of one million of dollars by the Mayor and City Council of Baltimore, by means of the hypothecation of such number of shares of the capital stock of the Baltimore and Ohio Rail Road Company, owned by the Mayor and City Council of Baltimore, as may be necessary for that purpose; and for investment of said sum of money in the bonds of the Western Maryland Rail Road Company, to be secured by a mortgage, next in priority after the mortgages already executed by said company," is within the scope and purview of the provision contained in section 7 of Article 11 of the Constitution of 1867, which declares that "no debt shall be created by the Mayor and City Council of Baltimore, unless it be authorized by an Act of the General Assembly, and by an ordinance of the Mayor and City Council of Baltimore, submitted to the legal voters of the city, and approved by a majority of the votes cast," and the same not having been so authorized and approved, is null and void.

The Mayor and City Council of Baltimore *vs.* Gill, *et al.*

The Ordinance being unconstitutional, citizens of Baltimore, owners of property therein, and taxpayers, were entitled to ask the interposition of a Court of Equity, to restrain its execution by injunction.

And such suit need not be instituted by the Attorney-General; nor is it necessary that he should be a party thereto.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case was filed on the 30th of June, 1869, by George M. Gill and others, in behalf of themselves, and of all others similarly interested, who might desire to make themselves parties to the proceeding, and represented that they were all citizens of the State of Maryland, and taxpayers on real and personal property situated in the city of Baltimore, and all citizens and residents of the city of Baltimore, except one, who was a citizen of Baltimore county. It stated that on the 30th of March, 1869, the Mayor of the city addressed a communication to the City Council thereof, in which he set forth the financial condition of the Western Maryland Railroad Company, and the amount of money needed to complete and equip their road to Williamsport, and earnestly recommended that the required relief should be granted; that this communication was referred to the joint standing committee of the City Council, on Ways and Means, which, on the 14th of May, 1869, reported in favor of granting the relief required by the said company, and submitted an Ordinance for the purpose, which, after some amendments, was passed by both branches of the City Council, and approved by the Mayor.

The bill then charged that the large debt which, from time to time, had been created by the city of Baltimore, for different purposes, and especially for the benefit of works of internal improvement, and the heavy liabilities which the city had incurred, with the object of aiding such works, were felt by the citizens thereof to be a great grievance, and that, consequently, in the Constitution of

the State of Maryland, adopted in 1867, the 7th section of the 11th Article was inserted, which restrains the city by provisions of a strict character from giving thereafter aid to such works; but, notwithstanding this, the proceedings above referred to clearly showed that the whole object of the Mayor and City Council in passing said Ordinance, was to grant the aid of the city in the construction of the Western Maryland Railroad; and that although this object was not avowed in said Ordinance, but on the contrary, was attempted to be concealed by the manner in which it was drawn, yet that it plainly appeared from the face of the Ordinance itself, and that the various provisions thereof were in direct violation of both the spirit and language of said section of the Constitution.

The complainants then showed (as grounds of the repugnancy of the Ordinance to the provisions of the Constitution) that the Ordinance, by its title, professed to provide for raising the sum of one million of dollars by the Mayor and City Council of Baltimore—being the amount which, in the judgment of the committee, as declared in their report, was sufficient for the completion and equipment of said railroad—by the hypothecation of such number of the shares of the stock of the Baltimore and Ohio Rail Road Company, owned by the city, as might be necessary for the purpose, to be invested in the bonds of the Western Maryland Rail Road Company; that said purpose, as declared in the title to the Ordinance, was unconstitutional, because to raise money by the hypothecation of stock was, in fact and in law, to borrow it, and, therefore, created a debt, and by said section of the Constitution, the Mayor and City Council of Baltimore were prohibited from creating any debt whatever, except in the following cases: First, when such debt was for the benefit of works of internal improvement, and then it must be authorized by an Act of the General Assembly, and by an Ordinance of the Mayor and City

Council, and approved by a majority of the legal voters of the city of Baltimore; and second, when the debt was for money temporarily borrowed to meet any deficiency in the City Treasury, or to provide for any emergency arising from the necessity of maintaining the police, or preserving the safety and sanitary condition of the city; that these were the only purposes for which the city could borrow money, and, therefore, to borrow money for the purpose of making an investment, if that were the true intent and meaning of the Ordinance, would be clearly in violation of the express letter of the Constitution, as well as of its spirit and meaning.

The bill then charged that the real object of the Ordinance was not in good faith to borrow money for the purpose of investment, but was to borrow money to be expended in the construction and equipment of the Western Maryland Rail Road, and that this object which was in direct violation of said section of the Constitution was plainly shown on the face of the different sections of the Ordinance; that the first section provided for the raising by the Mayor and City Council of Baltimore of $1,000,000 on the best terms possible, by the hypothecation of such number of the shares of the stock of the Baltimore and Ohio Rail Road Company owned by the city, as should be requisite for the purpose, to be returned on or after the 1st day of May, 1870, but those advancing the money were to look only to the stock pledged for the return of said advances, with interest thereon; that this section provided for the creation of a debt by the city of $1,000,000, payable on or after May 1st, 1870, at an undefined rate of interest, and to be secured by the hypothecation of an undefined amount of stock, and that the provision that those who advanced the money were to look only to the stock pledged for its return, in no degree prevented the transaction from creating a debt, because a debt existed whereon money was due, and every contract

whereby a determinate sum of money became due, created a debt, and whether the debt be secured by a pledge of much or little property, or by a personal liability, or in any other manner, or whether it be not secured at all, was a matter which affected the remedy only, and not the debt itself; that the second section directed the money so raised, to be invested in the bonds of the Western Maryland Rail Road Company, to be secured by a mortgage to be executed by said company, to be next in priority after existing mortgages, said mortgage to contain covenants that the proceeds of said bonds were to be applied only to the construction and equipment of said rail road to Williamsport, that said company should be the sole owner of the continuous line between Baltimore and Williamsport, that the main works and depot of the company were to be in the city of Baltimore, and that the sum, so to be invested in bonds was not to be demanded, except as it might be required to complete said road from its present terminus to Williamsport; and the bill then charged that this second section of the Ordinance was in violation of all the restrictions contained in the 7th section of the 11th Article of the Constitution, in that it gave or lent the credit of the city in aid of a corporation, to wit: the Western Maryland Rail Road Company; it involved the city in a work of internal improvement, and it granted aid to the Western Maryland Rail Road, which involved the faith and credit of the city of Baltimore, and made an appropriation therefor.

The bill then stated the provisions of the third section of the Ordinance, and charged that if any doubt could possibly exist, that the real object of the Ordinance was not to make an investment of the money, but to create a debt of the city on the pledge of its rail road stock, with the purpose of appropriating the amount so raised for the benefit of the Western Maryland Rail Road Company, and to lend the credit of the city in the construction of

said rail road, and to involve the city in such construction, it was entirely removed by these sections, because they provided that said pretended investment was to last until said debt, with interest, could be paid by the sale of a sufficient number of bonds of said company, endorsed by the city to make such payment, provided the General Assembly, at its next session, and a majority of the voters of the city should sanction such an arrangement, but if, as provided by the fourth section, such sanction could not be obtained, then the said debt was to be paid by a sale of the stock of the Baltimore and Ohio Rail Road Company, hypothecated by the city, but, in either case, the $1,000,- 000 borrowed by the city would, in the meantime, have been wholly expended in the construction and equipment of said rail road, and the debt of the city would be only repaid by a sale of bonds for which it made itself responsible, or by a sale of such portion of its Baltimore and Ohio Rail Road stock as might be necessary for the purpose. That the stock of the Baltimore and Ohio Rail Road Company owned by the city, constituted an investment long since lawfully made under a special authority from the General Assembly of Maryland, and was of so safe and productive a character that the stock of that company was then selling in the market at about twenty per cent. above its par value, and yielding regular dividends of not less than eight per cent. on its par value, and if this stock of the city should be sold on the happening of the contingency provided for, the city would have parted with its most valuable property, and, instead thereof, would be left the owner of bonds of the Western Maryland Rail Road Company, having no market value, and depending for any value thereafter on the very doubtful result of the completion of said road, and its successful and profitable working thereafter.

The bill further charged, that independently of said provision of the Constitution, there was no power nor

authority in the defendant to pass said Ordinance, either by virtue of the charter of the city of Baltimore or the laws of the State; that the defendant was a municipal corporation, whose functions were to regulate and control the local affairs of the city, and did not extend to engaging in works of internal improvement, or to giving them aid. The bill then alleged that the proceedings set forth in and contemplated by said Ordinance, would inflict great and irreparable injury on the complainants and other taxpayers in the city of Baltimore, because it proposed to raise a million of dollars to be expended in the construction and equipment of a rail road which was so involved in debt, that private capitalists and the counties and towns through which the road passed, were unwilling to advance any more money for said purposes; and said million was to be secured by a hypothecation of the best and most productive property owned by the city.

The bill prayed for an injunction to restrain the city, its officers and agents, from acting under or in any manner carrying out said Ordinance; and also prayed that the Ordinance might be declared unconstitutional, null and void, and for general relief.

With the bill were filed the report of the President of the Rail Road Company, the message of the Mayor, and the proceedings of the City Council referred to in the bill, and also a copy of the Ordinance. The Court ordered an injunction, which was issued.

On the 12th of August, 1869, the defendant filed a demurrer, setting forth, for special cause, that the complainants had no standing in a Court of Equity to maintain their suit. This demurrer was overruled, and the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON and MILLER, J.

*William A. Fisher* and *William Henry Norris*, for the appellant.

No one is competent to sue for a bill of injunction except for some individual injury. Where the grievance only affects the complainants, as it affects the general public, the State, by its proper officer, properly authorized, is alone entitled to sue. *The Skinner Co. vs. Irish Soc.*, 12 *Clark & Fin.*, 465, 482, 489, 490; *Davis vs. Mayor*, 2 *Duer*, 666–668–9; *Ketchum vs. Buffalo*, 14 *New York*, 379; *Doolittle vs. Supervisors*, 18 *New York*, 155; *Roosevelt vs. Draper*, 16 *How., Pr. R.*, 138–9; *Warwick vs. Mayor*, 16 *How., Pr. R.*, 360; *Manhattan Gas Co. vs. Barker*, 36 *How., Pr. R.*, 235; *Daner vs. Portsmouth*, 17 *N. H.*, 214–15–16, and 228; *Zabriskie vs. Jersey City*, 2 *Beasley*, 314; *Frizzle vs. Patrick*, 6 *Jones's Eq.*, (*N. Ca.*,) 354; *Hale vs. Cushman*, 6 *Met.*, 431; *Codding vs. Inh. of Marshfield*, 7 *Gray*, 271–2; *Smith vs. Boston*, 7 *Cush.*, 255; *Clafflin vs. Hopkinton*, 4 *Gray*, 502; *Hand vs. Lynn*, 1 *Allen*, 103; *Mountain Coal Co. vs. Lehigh Coal Co.*, 50 *Penn. State Rep.*, 99–100; *Smith vs. McCarthy*, 56 *Penn.*, 361–2; *Semmes vs. Mayor, &c., of Columbus,* 19 *Georgia*, 488; *State vs. Moore & Ligon*, 19 *Ala.*, 514; *State vs. Town Council of Cahaba*, 30 *Ala.*, 67; *People vs. Mahaney*, 13 *Mich.*, 498–500; *Mayor, &c., vs. Board of Police*, 15 *Md.*, 383, 395, 464, 492; *Const. of Md., Art.* 5, *sec.* 3; *Const. of Md., Art.* 13, *sec.* 7; *State vs. Jarrett*, 17 *Md.*, 325; *Act of* 1858, *ch.* 248, *sec.* 1; *Act of* 1868, *ch.* 471, *sec.* 184; *Act of* 1832, *ch.* 306; *Opinion of the Court of Appeals in W. S. Green's Estate*, 4 *Md. Ch. Dec.*, 351–2; *Del. and Md. R. R. Co. vs. Stump*, 8 *G. & J.*, 510; *Kerron on Injunctions*, 573, *note* (*b.*); *Grant on Corporations*, (80 *L. Lib.*,) 138, 140, 281, 282, 290, *note* (*g.*)

Assuming that the complainants had a right to sue, there is nothing in their bill to show the Ordinance to be illegal or unconstitutional, or an improper exercise of the discretionary power of a corporation over its assets. *Mayor vs. State*, 15 *Md.*, 387, 461, 473, 476, 482; *Bushnell vs. Beloit*, 10 *Wisc.*, 225–6; *Code of Public Local Laws, Art.* 4, *sec.* 1; *Act of* 1838, *ch.* 168; *Act of* 1842, *ch.* 301; *Act of*

1847, *ch.* 196, *sec.* 6 ; *Act of* 1852, *ch.* 141 ; *Act of* 1852, *ch.* 146 ; *Act of* 1852, *ch.* 307 ; *Act of* 1853, *ch.* 269 ; *Act of* 1854, *ch.* 34 ; *Act of* 1854, *ch.* 260 ; *Act of* 1860, *ch.* 20 ; *Act of* 1864, *ch.* 314 ; *Act of* 1866, *ch.* 13 ; *Act of* 1866, *ch.* 19 ; *Act of* 1866, *ch.* 71 ; *Act of* 1866, *ch.* 119 ; *Const. of Md.*, Art. 3, sec. 34, Art. 11, secs. 2, 7, *and* 8 ; *Semmes vs. Mayor, &c.*, 19 *Geo.*, 487 ; *Gelpcke vs. Dubuque*, 1 *Wallace*, 221 ; *Middleton Sav. Bank vs. Dubuque*, 15 *Iowa*, 399–400 ; *Ketchum vs. Buffalo*, 14 *New York*, 356 ; *Miller vs. Milwaukee*, 14 *Wisc.*, 646 ; *Buel vs. Buckingham*, 16 *Iowa*, 296 ; *Rogers vs. Burlington*, 3 *Wallace*, 665 ; *City of Baltimore vs. White*, 2 *Gill*, 444 ; *Meth. Pr. Church vs. Mayor*, 6 *Gill*, 301 ; *Lane Co. vs. Oregon*, 7 *Wallace*, 79–80 ; *Mayor vs. State*, 15 *Md.*, 473 ; *Glenn vs. Mayor*, 5 *G. & J.*, 494.

*Thomas Rowland* and *John Thomson Mason* filed a printed argument in behalf of the appellant.

*Geo. Wm. Brown, S. Teackle Wallis* and *I. Nevett Steele*, for the appellees.

As the demurrer admitted the truth of the facts stated in the bill, it conceded that the object of the defendant, in passing said Ordinance, was not in good faith to borrow money for the purpose of investment, but to borrow money to be expended in the construction and equipment of the Western Maryland Rail Road ; and that if this purpose should be carried out, it would inflict great and irreparable injury on the complainants and the other taxpayers of the city of Baltimore.

The true object of the Ordinance being thus admitted, and it being also admitted, that if carried out it would inflict irreparable injury on the complainants and other taxpayers of the city of Baltimore, the injunction was properly granted.

The complainants being citizens of Maryland, and resi-

dents of and taxpayers in the city of Baltimore, had the right, on behalf of themselves and others similarly situated, to file a bill to restrain the corporate authorities of the city from violating the provisions of the Constitution of the State and the charter of the city, by pledging or disposing of a large and valuable property of the city for an illegal purpose, and pledging the credit of the city for the same. *The People vs. Sturtevant*, 9 *N. Y.*, (5 *Selden*,) 263; *Christopher vs. Mayor, &c.*, 13 *Barb.*, 567; *Milhau vs. Sharp*, 15 *Barb.*, 193, 218, 230; *Stuyvesant vs. Piersol*, 15 *Barb.*, 244; *De Baun vs. Mayor, &c.*, 16 *Barb.*, 392, 395; *Wood vs. Draper*, 24 *Barb.*, 187; *State of N. Y. vs. Mayor, &c.*, 3 *Duer*, 119, 158; *City of Georgetown vs. Alexandria Canal Co.*, 12 *Peters*, 99; *Binney's Case*, 2 *Bland*, 142; *Del. & Md. R. R. vs. Stump*, 8 *G. & J.*, 510; *Hamilton vs. Whitridge*, 11 *Md.*, 128; *Eden on Injunctions*, 261, 267; *Kerr on Injunctions*, 297, 298, 571, 573; *City of New London vs. Brainard et al.*, 22 *Conn*, 552; *Webster vs. Town of Harwinton*, 32 *Conn.*, 131, 140; *Bromley vs. Smith*, 1 *Simons*, 8; *Mayor of London vs. Bolt*, 5 *Vesey*, 129; *Att'y-Genl. vs. Heelis*, 2 *Simon & Stuart*, 67; *Att'y-Genl. vs. Forbes*, 2 *Myl. & Cr.*, 129; *Soltau vs. De Held*, 9 *Eng. Law & Eq.*, 104; *Att'y-Genl. vs. Mayor of Wigan, Kay*, 274; 5 *De Gex, M. & G.* 54; *Att'y-Genl. vs. Cambridge Gas Consumers' Co.*, *Law Rep.*, 6 *Eq.*, 282; *Pope vs. Inhabitants of Halifax et al.*, 12 *Cush.*, 410; *Hood vs. Mayor, &c., of Lynn*, 1 *Allen*, 103; *Att'y-Genl. vs. Belfast Corporation*, 4 *Irish Ch. N. S.*, 119; *Constitution of Maryland*, Art. 5, Sec. 3; *Mayor vs. Beloit City & Town*, 7 *Wallace*, 613, 618; *III Revised Stat. of N. Y.*, 5 *Ed.* 762, Part *III*, *Ch.* 8, Title 4, Sec. 39; *Ibid.* 866, Title 17, Sec. 13; *Merrill vs. Plainfield*, 45 *N. H.*, 126, 133; *M. & M. Rail Road Co. vs. Ward*, 2 *Black*, 485; *Parker vs. Cotton & Woollen Co.*, 2 *Black*, 545.

The following authorities were relied on to show the invalidity and unconstitutionality of the ordinance:

*Constitution of Md., Art.* 11, *Sec.* 7 ; 3 *Blackst. Com.* 154 ; *Lane County vs. Oregon,* 7 *Wallace,* 79 ; *United States vs. Colt,* 1 *Peters's C. C.,* 145 ; *Carver vs. Braintree Man'fg Co.,* 2 *Story,* 433, 448 ; *Rodman vs. Munson,* 13 *Barb.,* 74, 79, 190 to 197 ; *Newell vs. The People,* 3 *Selden,* 9, 124, 5, 86, 102, 3, 4 ; *Rogers vs. Burlington,* 3 *Wallace,* 668 ; *Chamberlaine vs. Burlington,* 19 *Iowa,* 402–3 ; *Pierce on Am. R. R. Law,* 108 ; 2 *Redfield on Railways,* 398–403–4 ; *Sedgwick on Stat. and Const. Law,* 463, 464 ; *Constitution of New York of* 1846, *Art.* 7, *Secs.* 9, 10, 11, 12 ; *State vs. Mace,* 5 *Md.,* 351 ; *Bandel vs. Isaac,* 13 *Md.,* 223 ; *Moran vs. Commissioners, &c.,* 2 *Black,* 723 ; *Proceedings of Md. Convention of* 1867, *p.* 543–4–7.

BARTOL, C. J. delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City, directing a writ of injunction to be issued, to restrain the appellant, its officers and agents, from acting under, or in any manner carrying out the provisions of a certain Ordinance passed by the Mayor and City Council of Baltimore, which is exhibited with the bill of complaint, and set out in the record.

The bill filed by the appellees alleges that the Ordinance in question is unconstitutional, null, and void.

*First.* Because it was passed in violation of the provisions of Article 11, section 7, of the Constitution.

And, *secondly,* because, independently of the restrictions imposed by the Constitution, the Mayor, and City Council of Baltimore, as a municipal corporation, had not the power or authority to pass the Ordinance.

The defendant demurred to the bill, and alleged for cause of demurrer, " that the complainants have no standing in a court of equity to maintain their suit."

Two questions arise upon the record, and are necessary to be decided on this appeal.

1st. Is the Ordinance valid and constitutional ?

2d. Have the complainants a right to file the bill for an injunction?

1. In passing upon the question of the validity of the Ordinance, we shall not enter into an examination of the nature, objects and general powers of municipal corporations; or consider whether apart from the constitutional restriction, the Mayor and City Council of Baltimore would possess the power to pass the Ordinance in question, without special authority for that purpose being conferred on them by law.

It is quite immaterial to consider that subject in the present case, because, in our judgment, the powers of the Mayor and City Council, with regard to the subjects embraced in the Ordinance have been defined and limited by the express provisions of the Constitution, and the validity of the Ordinance may, therefore, be tested by an examination of its provisions in the light of the restrictions imposed upon the city government by the seventh section of the eleventh Article of the Constitution.

That is as follows:

"From and after the adoption of this Constitution, no debt (except as hereinafter excepted) shall be created by the Mayor and City Council of Baltimore; nor shall the credit of the Mayor and City Council of Baltimore be given, or loaned to, or in aid of any individual, association or corporation; nor shall the Mayor and City Council of Baltimore have the power to involve the city of Baltimore in the construction of works of internal improvement, nor in granting any aid thereto, which shall involve the faith and credit of the city, nor make any appropriation therefor, unless such debt or credit be authorized by an Act of the General Assembly of Maryland, and by an Ordinance of the Mayor and City Council of Baltimore, submitted to the legal voters of the city of Baltimore at such time and place as may be fixed by said Ordinance, and approved

by a majority of the votes cast at such time and place; but the Mayor and City Council may temporarily borrow any amount of money to meet any deficiency in the City Treasury, or to provide for any emergency arising from the necessity of maintaining the police, or preserving the safety and sanitary condition of the city, and make due and proper arrangements for the removal (*quære renewal*) and extension, in whole or in part, of any and all debts and obligations, created according to law, before the adoption of this Constitution."

Without stopping now to construe the several parts of this clause of the Constitution, or attempting to define their precise meaning and extent, it is very obvious that it prohibits the Mayor and City Council from creating any debt for the purpose of aiding in the construction of works of internal improvement, without the sanction of the General Assembly, and the assent of a majority of the legal voters of the city.

In order to determine whether the Ordinance is within the prohibition, we must look at its provisions, and ascertain its true construction, purpose, and effect.

It is set out at length in the record and need not be repeated here, except so far as may be necessary to point out its main features and operation.

We hazard nothing in saying that no one can read it, without being impressed with the conviction that the City Council must have been sensible of the difficulties which the Constitution interposed in the way of such legislation, and that its phraseology was ingeniously chosen for the purpose of avoiding the restrictions imposed by that instrument.

But in considering it, we must not forget that we are dealing with substance, not with form. It is the thing done, or sought to be accomplished, which must determine the question of the power of the Mayor and City Council to pass the Ordinance. This depends upon the true con-

struction, operation and effect of the whole Ordinance, not upon the form or mere phraseology of some of its parts.

When it provides in the first section, that one million of dollars shall be *raised* by the pledge or hypothecation of stock held by the city, it is substantially the same thing as if it provided in terms for *borrowing* the money. To raise money on a pledge is to borrow it; and the party from whom it is thus obtained actually loans it, although in the Ordinance it is called *furnishing* the money. When the Ordinance speaks of *returning* the money so raised, it means simply repaying the money borrowed. So when the Ordinance provides that the money so obtained shall be invested in the bonds of the Western Maryland Rail Road Company, to be secured by mortgage; that it shall be applied only to the construction and equipment of the road, and be furnished only as, and when required for that purpose; it, in substance and effect, provides for loaning the money to aid in the construction of that work of internal improvement.

Though in the title and body of the Ordinance the word *invest* is used, and it purports to be a mere change of investment, it is impossible to shut our eyes to the fact that the whole scheme of the Ordinance is to borrow the sum of one million of dollars, to secure its repayment by hypothecating stock of the Baltimore and Ohio Rail Road Company held by the city, not for the necessary or proper use of the city, nor for the purpose of making a *bonâ fide* change of investment; but for the purpose of enabling the city to loan the same to the Western Maryland Rail Road Company, to aid that company in making and equipping its road.

This purpose, sufficiently obvious from the face of the Ordinance, is made the more manifest by an examination of the message of the Mayor to the City Council, and the report of the committee by whom the Ordinance was pre-

pared, all of which are exhibited with the bill of complaint and found in the record.

It requires no refined or labored argument to show that the Ordinance is within the scope and purview of the constitutional provision, and that the Mayor and City Council were prohibited from passing it, without the previous authority of an Act of Assembly, and the sanction of a vote of the citizens.

The Constitution declares that " *no debt shall be created by the Mayor and City Council,*" unless it be first sanctioned by an Act of Assembly, and submitted to the legal voters, and approved by a majority of the votes cast. No language could be broader, or more comprehensive. The only exception is found in the latter part of the section, which permits the Mayor and City Council " temporarily, to borrow money to meet a deficiency in the city treasury, or to provide for any emergency arising from the necessity of maintaining the police, or preserving the safety and sanitary condition of the city."

These powers are necessary to maintain the faith of the city, and to secure its peace and good government, they are expressly excepted by the Constitution, and may be exercised within the discretion of the city government; but with this exception, the Constitution expressly forbids the Mayor and City Council from creating any debt.

Does the Ordinance before us propose to create a debt within the meaning of the Constitution? If this question is answered in the affirmative, then, as its object and purpose are not within the exception, it does what the Constitution forbids.

As we have before said, it provides for borrowing one million of dollars, upon the pledge of valuable property, or assets, held by the city. Such a transaction is, in our judgment, creating a debt within the intent and meaning of the Constitution. It has been argued that no debt is created by the Ordinance, because, by the second section,

it is provided that the parties loaning the money shall look for its repayment, exclusively to the stock pledged, and that in no event is the city to be liable or responsible for the return or repayment of any part thereof, even though the stock pledged should prove insufficient.

This provision was doubtless adopted for the purpose of avoiding the restriction imposed by the Constitution. We think it altogether ineffectual for that purpose.

A debt is money due upon a contract, without reference to the question of the remedy for its collection. It is not essential to the creation of a debt that the borrower should be liable to be sued therefor. No suit can be maintained against the State by one of its citizens, and yet debts are created by the State which it is bound in good faith to pay.

If money be borrowed by the Mayor and City Council, which, by the contract, is to be repaid, it is immaterial to inquire whether the city is liable to be sued therefor, or its payment be secured by the pledge or hypothecation of specific property held by the city, it would be in our judgment, equally the creation of a debt, within the meaning of the Constitution in one case as in the other. The Constitution is not to have a narrow or technical construction; but must be understood and enforced, according to the plain and common sense meaning of its terms.

The plain intent of this section is to restrain the municipal government of Baltimore from borrowing money, except for the purposes and in the manner prescribed, either upon the general credit of the city, or by a pledge of its revenues or assets; thereby creating a debt, and imposing additional burdens upon the citizens, which may directly or indirectly involve increased taxation.

This is not a new question. By the 12th section of the Constitution of New York, the legislature was prohibited from creating a debt, except for the purposes, and in the manner specified and excepted in the Constitution. An

Act was passed which provided for borrowing a sum of money, and its repayment was secured by the hypothecation of certain State revenues, to be derived from the canals.

The law contained a provision, similar to that in the Ordinance before us, declaring that " the State should in no event, be liable to make up any deficiency in the canal revenue, or to redeem the certificates from any other source than the canal revenues, as directed by the Act."

In the case of *Rodman vs. Munson,* in the Supreme Court, 13 *Barbour*, 63, and in *Newell vs. The People,* in the Court of Appeals, 3 *Selden*, 9 *to* 139, the question was considered, whether the Act was in violation of the provision of the Constitution, forbidding the creation of a debt? In both cases, it was ruled upon full argument, and, in our opinion, upon sound reason, that the act created a State debt within the meaning of the Constitution, notwithstanding the clause exempting the State from all liability to pay any deficiency that might arise in the fund pledged for its payment.

In 3 *Selden*, 87, Ch. J. RUGGLES said: " The restraints imposed by the 12th section are in effect annulled, if the Legislature may borrow without limit upon a pledge of public property, or the public revenue." That language may be applied with great force and propriety to the present case. To construe the provision of our Constitution, as prohibiting the Mayor and City Council from incurring a debt, for which the city may be liable to be sued, and its property seized; and to permit them to borrow money, and hypothecate the property or assets of the city to any amount within their discretion, to secure its repayment, would indeed be to annul the restraints imposed by the Constitution.

In passing upon this question, we have nothing to do with any inquiry as to the policy or expediency of granting to the Western Maryland Rail Road the aid proposed;

that is a question this Court has no power or right to consider.

However necessary such a measure may be for the completion of the road; or however wise and expedient it may be for the city of Baltimore, looking to her future commercial advantage and prosperity, to aid with her resources or her credit the completion of that work, it is very clear that the Mayor and City Council cannot constitutionally create a debt for that purpose. To do this the Constitution declares that the sanction of the legislature, and the vote of the people are necessary. The Ordinance before us was passed without observing these requirements of the Constitution, and it is our duty therefore to declare that it is null and void.

2. The remaining question for consideration is the right of the appellees to maintain the suit. The bill is filed by them as taxpayers on real and personal property situated in the city of Baltimore; they sue in behalf of themselves and of all other persons similarly interested, who may desire to make themselves parties to the proceeding. The bill also alleges that all the complainants, except Benjamin C. Howard, are citizens and residents of Baltimore city.

The objection raised by the demurrer, and made in the argument, is that the complainants have no standing in Court, and are not entitled to ask the interposition of a Court of Equity to restrain by injunction the execution of the Ordinance, even though the Court should be of opinion that it was passed in violation of the Constitution.

It has been argued that the wrong complained of is of a public nature, affecting the whole public alike, and can be redressed or prevented only by proceedings instituted on behalf of the public, in which the Attorney-General as representing the State is a necessary party, and that no action can be maintained by individuals, or relief granted, on their suit.

The question of the right of taxpayers, or corporators, to maintain a bill for injunction to restrain the officers and agents of a public municipal corporation from transcending their powers, by disposing of the property and assets of the corporation in an unconstitutional or unlawful way, thereby inflicting damage upon the complainants by increasing the burden of taxation, has been much discussed in the courts of this country, and the decisions upon it are not in all respects harmonious.

The right to maintain such suits has been recognized and enforced by the courts of New York in a number of cases: among them are *Christopher vs. The Mayor, &c., of New York*, 13 *Barb.*, 567; *Milhau vs. Sharp*, 15 *Barb.*, 193; *Stuyvesant vs. Piersol*, 15 *Barb.*, 244; *De Baun vs. Mayor, &c.*, 16 *Barb.*, 392. These decisions have been departed from, and their correctness questioned in some later decisions in that State, especially in *Roosevelt vs. Draper*, 23 *N. Y.*, 318; *Doolittle vs. Supervisors*, 18 *N. Y.*, 155; *Davis & Palmer vs. Mayor, &c., of New York*, 2 *Duer*, 663.

The earlier decisions have been followed in several of the other States.

In Pennsylvania, in *Sharpless vs. The Mayor of Philadelphia*, 21 *Penn.*, 148, and in *Moers vs. City of Reading*, in the same volume, 188, the right of citizens and taxpayers owning property within the limits of a municipal corporation, to file a bill of this kind was unquestioned.   In Connecticut the right was distinctly recognized and affirmed in *City of New London vs. Brainard*, 22 *Conn.*, 552, and *Webster vs. Town of Harwinton*, 32 *Conn.*, 131; and also in New Hampshire, in *Merrill vs. Plainfield*, 45 *N. H.*, 126.

Other cases might be referred to, which were cited in argument and have been examined by us, in which opposite and conflicting views have been taken by the Courts on this question.   To review them, or to attempt to reconcile them, would protract this opinion to an unreasonable length.   We shall not engage in the task, but shall briefly

state the grounds upon which we think this bill ought to be maintained.

It is certainly well settled that public wrongs cannot be redressed at the suit of individuals, who have no other interest in the matter than the rest of the public. Thus an individual cannot maintain a bill of injunction to prevent a public nuisance, unless he suffers thereby some special damage; and the principle governing cases of that kind has been supposed to be applicable to the present case. But it appears from the averments of the bill, that these complainants, as taxpayers of the city, and others similarly situated, in whose behalf as well as their own the bill is filed, constitute a class specially damaged by the alleged unlawful act of the corporation, in the alleged increase of the burden of taxation upon their property situated within the city. The complainants have therefore a special interest in the subject-matter of the suit, distinct from that of the general public.

The people of the State outside of the city of Baltimore, who are not liable to city taxation, can suffer no damage from the illegal act of the corporation complained of in the bill. Why then is it necessary that the State, by the Attorney-General, should be a party to the cause? That officer is not specially charged with the duty of intervening for the protection of the complainants. The Constitution, Art. 5, sec. 2, which defines his powers and duties, does not make it his duty to institute proceedings in a case like the present. He is required " to commence, prosecute, or defend any suit or action in any of the Courts, on the part of the State, which the General Assembly or the Governor, acting according to law, shall direct to be commenced, prosecuted, or defended." But it is not made his duty to institute proceedings in a case of this kind, at the instance of individuals ; nor have they the right to require his interposition in their behalf. We have been referred to the Act of 1868, ch. 471, sec. 184, which re-

quires the Attorney-General, upon the direction of the Governor, to institute proceedings to restrain corporations from assuming, or exercising any franchise, liberty or privilege not permitted by their charter or allowed by law. But that provision refers exclusively to private corporations, and has no application to the present case. We have discovered no sufficient reason for saying that in this proceeding the Attorney-General is a necessary party, or that the complainants have no standing in a court of equity to maintain the suit.

In this State the Courts have always maintained with jealous vigilance the restraints and limitations imposed by law upon the exercise of power by municipal and other corporations; and have not hesitated to exercise their rightful jurisdiction for the purpose of restraining them within the limits of their lawful authority, and of protecting the citizen from the consequence of their unauthorized or illegal acts.

If the right to maintain such a bill as this be denied, citizens and property-holders residing or holding property within the limits of a municipal corporation, would be without adequate remedy to prevent the injury and damage which might result to them from the unauthorized or illegal acts of the municipal government, and its officers and agents.

We are of opinion the complainants are entitled to the relief prayed, and therefore affirm the order of the Circuit Court granting the injunction.

*Order affirmed.*

(Decided 26th November, 1869.)