(Decided 26th March, 1879.)

WILLIAM WEBSTER, EDWARD WORTHINGTON, and others *vs.* THE COUNTY COMMISSIONERS OF BALTIMORE COUNTY.

*Injunction to restrain County Commissioners from Collecting certain Items in the Tax Levy for the year 1878.*

There can be no doubt of the power and jurisdiction of the Circuit Court for Baltimore County, to restrain the appellees from levying taxes for purposes not authorized by law. But in this case there appears to be no well founded objection to any of the items or sums included in the levy of 1878.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and ROBINSON, J.

*William Shepard Bryan* and *J. T. B. Dorsey,* for the appellants.

If this Court should be of opinion that the levy was improperly made, it is not to be supposed that any public officer would attempt to collect taxes condemned by such a judgment. The question as to the issuing of an injunction in such case would be one of form rather than of substance. The condemnation of the tax by the decision of the Appellate Court would have a moral power, greater than the restraint of any writ or process. But there can be no difficulty in the case, even on strictly technical principles. The writ of injunction is easily adapted to suit the emergencies of any case proper for its application. If it were necessary to give effect to the decision of this Court, it would order an injunction worded in such a manner as to compel a party to do a specific act. For instance, the defendants might be enjoined from permitting their levy to continue with the objectionable features in it which have been mentioned. *Carlisle vs. Stevenson,* 3 *Md. Ch. Dec.,* 499. And no treasurer could think that he could collect a tax not remaining in the levy. 2 *Story's Eq. Juris.,* sec. 965a; 18 *Md.,* 302; 31 *Md.,* 375, 395; 30 *Md.,* 446; *Act of* 1872, *ch.* 368.

*C. Bohn Slingluff* and *D. G. McIntosh,* for the appellees.

The decisions are not entirely harmonious respecting the right to restrain a municipal corporation from collecting taxes. But the correct view is, that equity ought not, except for the clearest reasons, to interfere with the speedy and ordinary collection of municipal or other public revenues. "If there is no power to levy the tax in question under any circumstances, or if it be assessed upon property not subject to taxation, and the remedy at law is not adequate, a plain case for equitable interposition is made out. But if the power to levy the tax exist, and the property be subject to taxation, mere errors and irregularities

APRIL TERM, 1879. 397

Webster, *et al. vs.* Co. Comm'rs of Balto. Co.

should, according to the better considered view, be corrected on *certiorari* or other appropriate proceedings, or their effect left to be tested at law. For equity ought not to interfere with the collection of taxes, unless the complainant makes a case coming within some acknowledged head of equity jurisdiction, such as multiplicity of suits, irreparable injury, or where a cloud will be thrown upon his title to real estate, unless he can make such a case, he must bring a legal action or pursue a legal remedy." 2 *Dillon Corporations, sec.* 737, *2nd Edition; Worth vs. Fayetteville,* 1 *Winst., N. Car. L. and Eq.,* No. 2, '70; *Dows vs. Chicago,* 11 *Wall.,* 188, (1870;) *Heywood vs. Buffalo,* 14 *N. Y.,* 534; *Bank vs. Supervisors,* 25 *N. Y.,* 312; *Cook Co. vs. Railroad Co.,* 35 *Ill.,* 465; *McLot vs. Davenport,* 17 *Iowa,* 379; *Green vs. Mumford,* 5 *Rhode Island,* 472; *Dodd vs. Hartford,* 25 *Conn.,* 232; *Dean vs. Todd,* 22 *Mo.,* 91; *Lockwood vs. St. Louis,* 24 *Mo.,* 20; *Hughes vs. Kline,* 30 *Pa.,* 227.

When the tax levy is made and signed by the County Commissioners their duty is at an end. They have nothing whatever to do with the collection of the taxes. Formerly they did appoint collectors for this purpose. By the Act of 1876, ch. 179, and the Act of 1878, ch. 494, that duty is now devolved exclusively upon the treasurer and collector, who is no servant or agent of the County Commissioners, but who fills a distinct and independent office, the powers and duties belonging to which, are distinctly marked and defined by law, and to whom is entrusted the duty of collecting State and county taxes. An injunction therefore, against the County Commissioners, if such properly lay, would be entirely nugatory.

BARTOL, C. J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellants, as tax-payers of Baltimore County, who sue as well for themselves, as in behalf of all other tax-payers

of the County, and alleges that the appellees, on the first day of May 1878, levied a tax for the year 1878, on the assessable property of Baltimore County amounting to $419,921.47, which was an assessment of 72 cents on every hundred dollars worth of assessable property in said County.

The bill alleges that in estimating the amount of money necessary to meet the current expenses for the year 1878, the appellees included certain specific items, which they were not authorized by law to embrace in the levy.

These items are alleged to be as follows :

*First.* The sum of $20,000, for what the appellees styled " *Contingent account.*"

*Second.* The sum of $60,000, for what is styled by them " *Deficiency in back levy of* 1877."

*Third.* The sum of $3000, for what is styled " *Interest on loan authorized by Act of Assembly.*"

All these several sums or items, it is alleged in the bill, were wrongfully and illegally included in the estimate of the amount to be levied, by the appellees, and the bill prays for an injunction to restrain the appellees, their agents and servants, from collecting the same.  The case was heard below upon the bill, answer and exhibits; and this appeal was taken from the order of the Circuit Court refusing the injunction and dismissing the bill.

*First.* As to the sum of $20,000, for " *Contingent account.*"  With respect to this item the answer alleges that " it is impossible, in making an estimate of expenses, or of claims against the county to enumerate all that will occur.  That the experience of their predecessors in office, during a long period of time, has demonstrated that in each year, large and increasing demands are made upon the County and a variety of necessary expenses have to be incurred which cannot be foreseen or provided for."  The answer enumerates a great many of the causes from which claims against the County may and do constantly

arise, which are in their nature contingent, and uncertain in their amounts, and which it is not practicable to specify or to know in advance.

The Act of 1854 *ch.* 103 requires the Commissioners "to levy within the year for all the expenses or disbursements which by a careful estimate shall be required for that year." They are authorized by the Code, *Art.* 28, *sec.* 5, "*to make their levy in whole or in part, by estimate,*" and they are required "to pay and discharge all claims on or against the County, which have been expressly or impliedly authorized by law."

In the discharge of these duties, having to make the levy in anticipation of the expenditures, we see no legal objection to this item in the levy on "*contingent account.*" It is not alleged in the bill, that the same is intended for, or in danger of being applied to any unlawful purpose, or for expenditures which the Commissioners are not legally authorized to incur, or that the same is excessive or unnecessary to meet contingent claims against the County.

*Second.* As to the item of $60,000, to meet deficiency in back levy of 1877. It appears by the statement of the special auditor contained in the record, that such deficiency existed to the amount of over $80,000. By the *Act of* 1878, *ch.* 146, the Commissioners were authorized to borrow $40,000, in addition to the sum of $20,000, previously authorized to be borrowed by the Act of 1870, ch. 309.

There can be doubt of the power of the Commissioners to include in the levy a sufficient sum to pay the principal of the debt so authorized; and the third item in the levy objected to, that is to say, the sum of $3000, to defray the interest on the debt, it was lawful for the Commissioners to include in the levy.

It appears that the deficiency in the levy of 1877, and the large outstanding debts against the County, rendered it necessary to borrow the money authorized by the Act

of 1878.  It is contended on the part of the appellants, that from the item of $60,000 levied to meet deficiency, there ought to have been deducted the amounts due by collectors of taxes of former levies, for some parts of which judgments had been recovered; and that instead of levying for $60,000, the Commissioners ought to have estimated the amounts due by collectors, and have levied only for the balance.  We agree with the Circuit Court in the opinion that this objection is not well founded.  As justly said by the Judges of the Circuit Court: "No one could certainly know at the time the levy for 1878 was made, what portion of these amounts, if any, could be collected during the current year, therefore the County Commissioners were right not to take them into consideration, as available to meet claims and demands against the County, until they were actually collected and paid into the County treasury."

We need not go into the consideration of the subject of the "Almshouse fund" so designated, in the Auditor's Report and mentioned in the bill of complaint, as it clearly appears that the levy does not include any sum on that account.

There can be no doubt of the power and jurisdiction of the Circuit Court to restrain the County Commissioners from levying taxes for purposes not authorized by law. But in this case there appears to be no well founded objection to any of the items or sums included in the levy of 1878 to which we have adverted, and for these reasons, without considering the objection urged by the appellees to the form of the prayer for injunction, we affirm the order of the Circuit Court.

*Order affirmed.*

(Decided 25th April, 1879.)