MICHAEL J. KELLY and JOHN B. PIET, trading as KELLY, PIET & COMPANY *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE and W. J. C. DULANY & COMPANY.

*Award of Contract for supplying Stationery and Printed Matter to the Mayor and City Council of Baltimore—When Equity will refuse to interfere by Injunction with the Authority of a Municipality—Practice in Cases where Injunctions are Refused.*

By virtue of Ordinance No. 74 of 1876, of the Mayor and City Council of Baltimore, the City Librarian on the 10th October, 1878, advertised for proposals for supplying the departments of the City Government with stationery and printed matter from the 1st January, 1879, to the 31st December, 1879, inclusive. In answer to this, three bids were presented, one by the appellants, one by the appellees D., and one by J. W. S. They were laid before the

Kelly, Piet & Co. *vs.* M. & C. C. of Balto.

Mayor, who with the Comptroller and Register opened them. When they were opened, they were examined by the City Librarian and the contract for both stationery and printed matter was awarded to the appellees, D., as being the lowest bidders therefor. In proceedings on a bill filed by the appellants, as printers and stationers, and as tax-payers of Baltimore City, alleging that the contract was fraudulently obtained by D., and that it should have been awarded to them as the lowest bidders therefor, and praying that the Mayor and City Council might be enjoined from executing the contract, it was HELD:

That the bill presented no claim to the exercise of the preventive power of the Court.

Applications for an injunction are addressed to the conscience and discretion of the Court, and the facts submitted should justify its exercise beyond reasonable doubt. Public wrongs, although involving private injuries, are not to be made the grounds of personal suits, at law or in equity, unless the complainant has sustained special damage, and in many instances, the private injury is merged in the public. In exceptional cases, where great principles or large public interests are involved, citizens or corporators may sue in behalf of themselves and their fellow-citizens to arrest some projected violation of constitutional law or abuse of corporate authority.

This Court has not undertaken to declare that every abuse of a legal authority by a municipal corporation to the prejudice of a tax-payer or tax-payers is a ground for equitable interference to prevent injury. On the contrary, recognizing the contrariety of opinion which exists among the most eminent Judges as to the right of the Courts to interpose to arrest the authority of local governments, in the exercise of lawful powers, they have confined their jurisdiction to cases of *ultra vires*, or clear assumption of powers not granted.

Where the injunction asked for in a bill is ancillary to the relief prayed, and the cause is set down for hearing upon the motion to dissolve, if the injunction is refused, the bill should not be dismissed, the complainant being entitled to have the bill retained, and proceed to final hearing. But where the injunction asked for is not ancillary but the primary and principal relief prayed, there is no reason for retaining the bill, if upon hearing, upon bill and answer, or bill, answer and depositions, it appears to the Court, there is no ground upon the merits for issuing or granting the injunction.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER, and IRVING, J.

*William J. O'Brien* and *Albert Ritchie,* for the appellants.

*James L. McLane,* for the appellee, the Mayor and City Council of Baltimore.

*Bradley T. Johnson,* for the other appellees.

BOWIE, J., delivered the opinion of the Court.

The object of the appellants' bill in this case, is to vacate a contract, alleged to have been fraudulently obtained by the appellees, Dulany & Co., from their co-appellees, the Mayor and City Council of Baltimore, and to enjoin the latter, its agents, officers and servants from executing said contract and doing anything in furtherance thereof.

The bill is filed by the complainants in their own right as co-partners, and actually engaged in the business of *printers* and *stationers,* and as tax-payers of said city largely interested in the faithful and economical administration of the affairs of said city. It is not filed in behalf of themselves and others who may come in and contribute to the expenses of the suit. They do not make their fellow-citizens parties to the proceeding. No one except the persons immediately interested in the contract, and professing to be aggrieved by the award, unites in the complaint. It is therefore strictly speaking, a private bill.

The material allegations of the appellants' bill are substantially as follows:

They allege that the Mayor and City Council of Baltimore, (through the City Librarian,) advertised on the 10th of October, 1878, for proposals to·supply the several departments of the City Government, with stationery and printed matter, from Jan'y 1st, 1879, to December 31st, 1879.

Which advertisement contained the following clauses:

"Specimens of what will be required, and quantity needed, can be obtained on application."

" The ordinance provides: ' no proposal shall be received from any, but those actually engaged in the printing and stationery business in Baltimore.' The right to reject any bid that shall not be deemed for the best interest of the city is hereby reserved."

In response to this advertisement, proposals were made by the appellants, based on specifications, furnished by the City Librarian, for printing and stationery; and the appellees, W. J. C. Dulany & Co., and one, J. Wesley Smith, also made proposals, all of which were laid before the Mayor, who together with the Comptroller and Register opened the same, that when they were opened, they were examined by the City Librarian, and the contract was awarded to W. J. C. Dulany & Co. as the lowest bidders for said work, when in fact said appellants were the lowest bidders.

They charge that the specifications on which the proposals were made, were arranged by the Librarian and the appellees, Dulany & Co., to enable them to commit a fraud upon the Mayor and City Council, and in pursuance of a conspiracy, to defraud the Mayor and City Council, the tax-payers of said city, and the complainants, etc.

It is alleged that the proposals of Dulany & Co. were fraudulently altered by the Librarian, after they had been accepted, and were raised in all $600 for the benefit of Dulany & Co.

The appellants charge that their proposal for printing, was lower than the award made to Dulany & Co., and

that being the lowest bidders, and in all other respects unexceptionable, they were and now are entitled to the contract, and that the award to the appellees Dulany & Co. was fraudulent and to the great injury of the tax-payers of the city.

They further charge that the contract for printing should not have been awarded to Dulany & Co., because they were not at that time, nor at any time previously, actually engaged in the printing and stationery business, which fact, was well known to *the Mayor, Comptroller, Register and Librarian*, before said proposals were received and accepted, and they "*willfully, knowingly and contrarily,*" against the provisions of the. Ordinance of the City, and in fraud of the rights of the complainants, awarded the contract for printing and stationery to the said Dulany & Co.

The complainants charge that Ordinance No. 74, 1876, invests the City Officers with power to contract for printing and stationery, separately, if in their opinion they believe it best for the interests of the city, and in this view of the law the complainants were entitled to the contract for printing, but *the City* Officers denying they possessed such power to contract for printing and stationery separately, have excluded others from bidding.

After various other averments as to the power and duty of the Mayor, etc., to contract for printing and stationery separately, and imputations of fraud in refusing to entertain separate proposals, the appellants charge that all such acts are contrary to equity, injurious to their rights and in fraud of the tax-payers of said city, and that said award and contract with Dulany & Co. are illegal and void; in consideration whereof, and to the end that the defendants may make answer, and that the award may be declared void and the Mayor and City Council of Baltimore, may be enjoined from executing. said contract, they pray for an injunction, and subpœnas and general relief.

Answers were filed by the respondents under oath, denying all the charges of fraud and malfeasance or misfeasance alleged against them and all combinations and conspiracy. Simultaneously, with the filing of the answers, an order was passed on application of the complainants, that the parties have leave to take testimony, under which various witnesses were examined and their depositions returned. " The cause coming on to be heard, and being submitted, etc., on the 30th of September, 1879, it was by the Circuit Court of Baltimore City, decreed that the injunction prayed for in the bill be refused and the bill dismissed with costs."

From which decree this appeal is taken.

The testimony is too voluminous to be condensed. It is mainly directed to the mode in which the proposals were submitted and manipulated by the Librarian, the occupation of the Dulanys as stationers and printers, and the knowledge of that fact by the Mayor and his colleagues. Suffice it to say, no fraudulent conduct is proved against the defendants, and the imputation as against the Mayor and his colleagues, is expressly withdrawn in argument before us.

Applications for an injunction are addressed to the conscience and discretion of the Court, and the facts submitted should justify its exercise, beyond reasonable doubt.

Public wrongs, although involving private injuries, are not to be made the grounds of personal suits at law, or in equity, unless the complainant has sustained special damage, and in many instances, the private injury is merged in the public.

In exceptional cases, where great principles or large public interests are involved, citizens or corporators may sue in behalf of themselves, and their fellow-citizens to arrest some projected violation of constitutional law or abuse of corporate authority.

Although this Court in the case of the *Mayor and City Council of Baltimore vs. Gill*, 31 *Md.,* 393, maintained the right of tax-payers in behalf of themselves and others to intervene by injunction to prevent the city from transcending its corporate powers, in negotiating a loan contrary to the provisions of the Constitution, yet it declared the question had been much discussed and the decisions upon it are not in all respects harmonious.

It was only upon the principle that if such a remedy was desired, citizens and property holders, residing within the limits of a municipality, would be liable to injury and damage from unauthorized and illegal acts of the corporation, that the suit was sustained.

This Court has not undertaken to declare that every abuse of a legal authority by a municipal corporation, to the prejudice of a tax-payer, is a ground for equitable interference to prevent injury.

On the contrary, recognizing the contrariety of opinion which exists among the most eminent Judges as to the right of the Courts to interpose to arrest the authority of local governments, in the exercise of lawful powers, they have confined their jurisdiction to cases of *ultra vires* or clear assumption of powers not granted. In the case of the *Mayor and City Council of Baltimore vs. Gill*, this language is used: "It is certainly well settled that public wrongs cannot be redressed at the suit of individuals, who have no other interest in the matter than the rest of the public." * * * * *

"But it appears from the averments of the bill, that these complainants as tax-payers of the city, and others similarly situated, in whose behalf as well as their own, the bill is filed, constitute a class specially damaged by the alleged unlawful act of the corporation, in the alleged increase of the burden of taxation upon their property situated within the city. The complainants have, therefore, a special interest in the subject-matter of the suit distinct from that of the general public." 31 *Md.,* 394.

The rule as restricted by the above decision, is virtually adopted by Dillon in his work on *Municipal Corporations.* He says, "there appears to be little difference of judicial opinion *as to the right of the taxable* inhabitants, whenever the threatened illegal corporate act will increase the burden of taxation, to the aid of equity in proper cases to prevent it. The chief difference is as to the proper party plaintiff in a bill of this character. If the ordinary principle, which obtains as to public nuisances is applied, it must be admitted, where the duty about to be violated by the corporation or its officers is public in its nature, and affects all of the inhabitants alike, that one not suffering any special injury cannot in *his own name* or by uniting with others maintain a bill to enjoin it." 2 *Dillon on Mun. Cor.*, sec. 736.

Upon a review of all the decisions in Great Britain and the United States, the conclusions announced by Judge DILLON are :

"1st. That the proper parties may resort to equity, against municipal corporations and their officers when these are acting *ultra vires,* and where such illegal acts affect injuriously the property owner or the taxable inhabitant. But if in these cases the parties injured have adequate remedy at law, equity will not interfere.

"2nd. That in the absence of special legislation, the proper public officer of the commonwealth may file an information or bill in equity to prevent misuse of corporate powers, or to set aside or correct illegal corporate acts.

"3rd. A bill may be filed in the name of one or more of the taxable inhabitants for themselves and all others similarly situated, and that the Court should regard it in the nature of a public proceeding to test the validity of the corporate acts sought to be impeached and deal with and control it accordingly." 2 *Dillon, sec.* 736 *a.*

The bill in this case presents no such claim to the exercise of the preventive power of the Court.

Reduced to its elementary facts, it is a controversy between rival tradesmen for the custom of the Mayor and City Council, in supplying the departments with stationery and printed matter.

A subordinate officer of the corporation is charged with fraudulent practices in procuring the contract for furnishing these articles, with the view of defrauding the Mayor and City, and benefiting himself and his co-conspirators.

The chief contracting party, the Mayor and his colleagues, are absolved from all collusion with the sub-agent, and the defendants, in the argument before this Court; no *mala fides* is imputed to them, and yet, although they deny all complicity and the truth of the allegations in all material aspects, the complainants insist upon their right to enjoin the further execution of the contract, and to have it annulled.

The Chief Magistrate and Council of the City, the guardians of the public treasury, deny that any wrong has been done.

Assuming all the details of misconduct imputed to the City Librarian to be true, and that a combination existed between him and the defendants Dulany & Co., it does not follow that a contract made under the circumstances should be dissolved against the consent of the other contracting party.

The fraud of a stranger or an agent, in collusion with one party, cannot deprive the other contracting party ignorant and innocent of the evil intent, from claiming the benefit of the contract.

The facts alleged against the Librarian and the defendants, Dulany & Co., amount to a misdemeanor, and are punishable criminally. The remedy is by indictment, and not an injunction.

If every individual who felt himself aggrieved by the action of the corporate authorities in awarding contracts, was allowed to enjoin the corporation in the execution of such contracts, upon the oath of the complainant, that the contract was obtained by the fraud of some subordinate officer, the administration of the municipal government might be seriously embarrassed or totally suspended.

The evidence does not establish any act of malfeasance on the part of the Mayor and his colleagues, and although greater care might have been exercised in examining into the details or items of the proposals, it is probable such examination could only have been satisfactorily made by some clerk familiar with the business.

The public has no interest in this controversy. The difference between the proposals of the competing contractors is infinitesimally small, when divided amongst the tax-payers.

To drag them in as complainants, is to make a mountain of a mole hill, and magnify the alleged injuries of private citizens, into a grave impeachment of public officers without sufficient foundation.

A great deal of labor and learning has been expended upon the question, whether the cause in this case was set down for hearing upon the motion to dissolve, or was submitted generally for final hearing. If presented as a motion to dissolve, it is contended, that the decree is erroneous in dismissing the bill, the complainants being entitled to have the bill retained and proceed to final hearing.

There can be no doubt that such has been the practice of this State, sanctioned by the decisions of this Court in several cases where the question arose upon a motion to dissolve, and the injunction was ancillary to the relief prayed. *Vide, Dorsey vs. Hagerstown Bank,* 17 *Md.,* 408; *Huston, et al. vs. Ditto, et al.,* 20 *Md.,* 305.

But where the injunction asked for is not ancillary, but the primary and principal relief prayed, there is no reason for retaining the bill, if upon hearing, upon bill and answer, or bill, answer and depositions, it appears to the Court, there is no ground for issuing or granting the injunction upon the merits.

In several recent cases this course has been adopted by this Court. *Webster, et al. vs. The County Com'rs of Balto. County,* 51 *Md.,* 395.

According to the prayer of the bill in this case, the injunction was the only specific relief prayed, no other could have been granted under the general prayer for relief.

The question at the hearing was not, should an injunction be dissolved, but should one be granted, and there being in no aspect of the case, ground for other and further relief, the Court below was warranted in dismissing the bill with costs.

*Decree affirmed.*

(Decided 12th February, 1880.)