THE IRONWOOD WATER-WORKS COMPANY AND THE HURLEY WATER COMPANY, v. WILLIAM TREBILCOCK, MAYOR, JOHN EVANS, CLERK, AND CHARLES W. CURRAN, COMPTROLLER, OF THE CITY OF IRONWOOD. CON GEARY ET AL. V. SAME.

*Municipal corporations—Limit upon indebtedness—Purchase of property subject to lien.*

1. Municipal corporations cannot avoid restrictions upon the amount of indebtedness they may incur by purchasing property for public purposes subject to liens.

2.. The charter of the city of Ironwood (Act No. 235, Local Acts of 1893), which provides that the common council may pur-

chase of the Ironwood Water-works Company and the Hurley Water Company all the water pipe owned by said companies, and laid in said city, and also the stock, rights, privileges, and franchises of said companies, and may provide for the payment of the purchase price by bonding the city, subject to a provision in the charter that the total indebtedness of the city for borrowed money shall not exceed five per cent. of the assessed valuation of the real and personal property of the city for 1892, and, in case said purchase is not made, such indebtedness shall not exceed three per cent. of said valuation, does not authorize such purchase subject to a mortgage which, if treated as a debt of the city, increases its indebtedness beyond the amount limited in the charter.

*Certiorari* to Gogebic. (Haire, J.) Argued January 30, 1894. Decided March 27, 1894.

Relators applied to the circuit court for *mandamus* to compel the respondents to issue certain bonds in payment for water-works. Respondents bring *certiorari* to review orders granting the writs. Reversed, and writs denied. The facts are stated in the opinion.

*Thomas Kissane* (*Lewis L. Delafield* and *F. A. Baker,* of counsel), for relators Ironwood Water-works Company and Hurley Water Company.

*Charles M. Humphrey,* city attorney, for remaining relators.

*Charles E. Miller,* for respondents.

GRANT, J. The city of Ironwood, Mich., and the unincorporated village of Hurley, in the state of Wisconsin, are situated on the opposite sides of the Montreal river, the boundary line between Michigan and Wisconsin. The Ironwood Water-works Company is a private corporation, duly organized October 10, 1890, under chapter 84, How. Stat., for the purpose of constructing, maintaining, and operating water-works in the city of Ironwood, and supplying the city and its inhabitants with water for public and

private use.   The Hurley Water Company is a like corporation, duly organized July 26, 1890, under chapters 85,
86, Rev. Stat. Wis.    The proper ordinances were passed
by their respective municipal corporations, conferring the
requisite franchises for a period of 30 years.    The two corporations are under the same management, and controlled
by the same parties.    They constructed a system of waterworks to supply the two places with water under their
respective franchises.    Water mains were laid in the city
of Ironwood by the Ironwood Water-works Company, and
in Hurley by the Hurley Water Company.   'The two cities
were connected by water mains laid across the Montreal
river, under two of the main streets which run through
the two places.    Each company erected a standpipe or
reservoir within the territory of its municipality.    Both
standpipes are of the same size, on the same level, and
contribute in maintaining the pressure of water and supplying water to both places.    Both companies are supplied
with water from a pumping station in the city of Ironwood.    The capital stock of each company is $100,000, all
duly issued.    November 1, 1890, the Hurley Water Company issued a series of bonds to the amount of $250,000,
of which $226,000 are outstanding, and the remainder are
held by the trustee of the bondholders, to be delivered and
used in making future extensions of water mains.    These
bonds are secured by mortgage upon all the property,
revenues, and franchises of both companies.

The charter[1] of the city of Ironwood contains the following provisions:

"The common council may purchase of the Ironwood
Water-works Company and the Hurley Water Company,
a corporation, all the water pipe owned by said companies,
and now laid in the streets and alleys and other public
places of said city; also purchase the stock, rights, privi-

---

[1] Local Acts of 1893, pp. 69, 70.

leges, and franchises of said Ironwood Water-works Company and said Hurley Water Company; and the said common council may provide for the payment of such pipes, stock, privileges, and franchises by bonding said city, except as hereinafter provided."

"The total indebtedness of the city for borrowed money shall not exceed five per cent. of the assessed valuation of the real and personal property of said city for the year 1892; and, in case the common council does not purchase said Ironwood Water-works Company and Hurley Water Company, the bonding of the city shall not exceed three per cent. of the equalized valuation of 1892."

Under the resolution of the council, the question was submitted to the electors of the city, and the requisite vote authorizing the purchase of the water-works was obtained. . The council thereupon, by appropriate resolution, agreed to purchase all the water pipe, stock, rights, privileges, and franchises of said companies for the sum of $85,000, and directed bonds of the city to be issued to that amount in payment thereof. The respondents refused to execute them, and these relators filed their respective petitions to the circuit court, praying for the writ of *mandamus* to compel their execution.

At the time these bonds were ordered to be issued, the city of Ironwood had a bonded indebtedness as follows: $40,000 of sewer bonds, and $150,000 of public improvement bonds. The bonded indebtedness, therefore, with the addition of this $85,000, would be $275,000. If the $226,-000 of bonds outstanding against the Hurley Water Company should be classed as a debt of the city, the amount of the indebtedness authorized by its charter is largely exceeded, and the issue of these bonds would be void.

The relators defend the action of the council upon the ground that the city assumes no responsibility for the payment of the bonds of the Hurley Water Company, which cover all its property and franchises, and that it purchased only the equity of redemption. They say that

an individual or private corporation purchasing the equity
of redemption in land does not assume the payment of
the debt secured by the mortgage, in the absence of an
express agreement, and that the same rule applies in the
present case to a municipal corporation which purchases
water-works property subject to a large bonded indebted-
ness.

If the same rule applies to municipal corporations as to
individuals and private corporations, the relators are
unquestionably right in their contention, for it is the
universal rule that a purchaser of land subject to an
existing mortgage incurs no personal liability to pay the
debt secured thereby. We are not cited to, nor have I
been able to find, any authorities directly in point. A
municipal corporation cannot, either expressly or impliedly,
incur a debt beyond the charter restriction. Municipal
corporations have never in this State, nor probably in any
other, been authorized to raise money by a mortgage upon
the public property. Credit to counties, school-districts,
and municipal corporations is not given upon the faith of
the property they own, but upon the legality of the debt
contracted, and the ability to raise it by taxation, whether
such debt be bonded or otherwise. In regard to its debts,
a municipal corporation occupies a very different position
from that of a private individual. If a city or county
were authorized to purchase lands for city or county build-
ings, with a restriction upon the amount to be raised or
the indebtedness to be incurred, and either should buy
them subject to an existing mortgage, it would result,
from relators' contention, that the public corporation was
under no legal obligation to pay the mortgage, and it
might be foreclosed, and the lands and buildings erected
thereon sold upon the foreclosure. It needs no argument
to show that this is contrary to public policy, and to the
policy universally pursued in this State. There is nothing

in the charter of the city of Ironwood to indicate that the Legislature understood that it was departing from this policy, or that it was conferring authority to buy public property subject to a mortgage lien of a quarter of a million of dollars. Did the Legislature intend to authorize the city to purchase a large and valuable plant subject to such an indebtedness, secured by a mortgage which might be foreclosed, and all the property taken from it by the decree of the court? He who invokes such a power must be able to point to the clear and unmistakable language of the statute conferring it. Municipal corporations possess no such power by implication. Is it not clear that the Legislature, by this act, authorized, not the purchase of an equity of redemption, but the purchase of all the property, real or personal, of these private companies?

In the case of *Mayor v. Gill*, 31 Md. 375, the mayor and council sought to avoid a similar restriction in the charter of Baltimore by pledging certain railroad stocks, with the agreement that the pledgee should look, for the repayment of the money, exclusively to the stock pledged, and that in no event was the city to be liable or responsible for the return or payment of any part thereof, even though the stock pledged should prove insufficient. It was held that the restrictive provision of the charter could not be thus evaded. See, also, the authorities there cited.

In *Litchfield v. Ballou*, 114 U. S. 190, the complainant sought to recover of the city of Litchfield moneys which it had realized upon void bonds, upon the ground that the city had received the benefit of the money. The constitution of the state of Illinois provided that no county, city, etc., should be allowed to become indebted in any manner for an indebtedness exceeding 5 per cent. on the value of the taxable property therein. While the facts of that case are not similar to those in this, yet the following language seems applicable:

"It [the city] shall not become indebted; shall not incur any pecuniary liability. It shall not do this in any manner, neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for any purpose, no matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness · to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt, in any manner or for any purpose whatever. If this prohibition is worth anything, it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law."

See, also, *Appeal of City of Erie*, 91 Penn. St. 398.

Obviously, the city of Ironwood will have no way to protect the property thus purchased except by payment of the lien thereon. It is immaterial whether or not the water-works companies are dissolved by the arrangement, or that they cannot transfer their corporate existence, under the authority of *Railroad Co. v. Railroad Commissioners*, 112 U. S. 609. Their continuance as corporations will be of no benefit to the bondholders, as it does not appear that there is any personal liability on the part of the stockholders. All their tangible property or the equity of redemption therein is transferred, assigned, and sold under this agreement. It is all covered by this mortgage. The city must pay the mortgage, or lose all the benefits to be derived from the purchase. It is expected and understood that it will pay it and the interest on it. Such was the evident intention of all parties.

We therefore have reached the following conclusions:

1. The charter does not authorize the purchase of this property subject to the mortgage.

2. Municipal corporations cannot avoid restrictions upon the amount of indebtedness they may incur by buying property for public purposes subject to liens.

Other important questions are raised in the case, which we need not discuss or determine, since this disposes of the case.

The judgment of the circuit court must be reversed, and the writ of *mandamus* denied.

The other Justices concurred.