CAUSTEN BROWNE & others *vs.* CITY OF BOSTON & another.

Suffolk.    January 24, 25, 1901. — June 18, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Municipal Corporations*, Limitation of indebtedness. *Boston*, St. 1885, c. 178.

The city authorities of Boston desired to acquire certain land adjoining land of the city used for a hospital. The price of the land was $226,000. The borrowing capacity of the city under St. 1885, c. 178, limiting its indebtedness was but little over $24,000, and it had no money in its treasury available for the purchase of the land. It was arranged with the owners of the land that they should mortgage it to third parties for $202,000 and the city should buy it subject to the mortgages for $24,000. The mortgages were to be payable three years after the conveyance to the city, with a privilege to the owners, their grantees and assigns to pay them off before maturity. The city was not to be mentioned in the mortgages and the deeds to the city were to contain the statement, that the city was not to be held liable in any way for the payment of the mortgages or the interest thereon. Upon a petition of more than ten taxable inhabitants of Boston, under St. 1898, c. 490, to enjoin the city from carrying out the transaction, it was *held*, that the proposed action of the city must be enjoined as an attempted evasion of St. 1885, c. 178, and within its prohibition; that the transaction was in substance and effect a purchase of the land by the city for the sum of $226,000 of which it was to pay $24,000 in cash and the rest in three years with interest, with the privilege of paying sooner, and this notwithstanding the fact that the city could not be sued for the balance of the purchase money, the manner in

which the indebtedness was created being immaterial, if the result was to subject the city to a present liability, direct or indirect, which the taxpayers eventually would be called upon to meet.

MORTON, J. This is a petition under St. 1885, c. 178, § 3, and St. 1898, c. 490, by more than ten taxable inhabitants of Boston to restrain the city and its treasurer from purchasing and paying for certain parcels of land in that city on the ground that the debt limit provided by St. 1885, c. 178, § 2, will be exceeded thereby. The case was heard on the petition, answer and agreed facts and reserved for the consideration of the full court.

From the agreed facts it appears that the city of Boston owns certain premises which are occupied and used as an insane hospital and are under the control of a board of trustees. Prior to October 30, 1899, the trustees "requested the mayor of the city to make an appropriation to buy various parcels of land . . . for the purposes of the hospital, and among other parcels" the land in question. The mayor laid the communication, as provided by law, before the board of estimate and apportionment. St. 1898, c. 434, § 4. That board made an arrangement with the owners of the land "by which the city of Boston agreed to buy, in the manner hereinafter described, and the owners to sell, said parcels for the following prices." Then follows a statement of the price per foot of each of the different parcels amounting in all to $226,000. It was arranged with the owners of the land that they should mortgage the same to third parties for $202,000 payable with interest after three years from the conveyance to the city with a privilege reserved in the mortgages to the owners, their grantees and assigns to pay the mortgages and interest at maturity or earlier if they should so desire. These mortgages were to be placed on the land before it was conveyed to the city, and it was arranged that the land should be conveyed subject to them but that the city should not be mentioned in them and that the deeds should contain the statement that the city was not to be held liable in any way for the payment of the mortgages or the interest thereon. The board of estimate passed an order appropriating $24,000 for the purchase of the equity in the land, and authorizing the city treasurer to issue from time to time bonds to that amount for that purpose, and directing the trustees of the Insane Hospital to expend the

appropriation for that purpose. This order was duly submitted by the mayor to the city council and was passed by the board of aldermen and the common council, and was approved by the mayor prior to December 12, 1899. None of the mortgages had been given or recorded at the time of filing this petition. The officers of the city propose to carry out the agreements that have been made for the purchase of the land and on the delivery of the deeds the city is to take possession of the land. On October 30 and since, the borrowing capacity of the city under the statutes limiting its indebtedness was and has been but little over $24,000. The assessed valuation of the land is $33,800, and the owners of it have been admitted as parties to this suit.

It is obvious that if the arrangements which have been entered into between the city and the owners of the land are valid and binding, an easy method will be afforded by which cities and towns in this and similar cases can evade the statutes relating to municipal indebtedness. Without meaning to intimate whether it would stand any better if it were, the transaction does not seem to us to be in any just sense a letting and hiring with a right of purchase. Nor does it constitute, we think, an agreement whereby the city acquires a buyer's option on the lands in question even if we assume that a city or town may properly enter into such an arrangement. Neither do we think that the transaction can be regarded merely as the purchase of an equity of redemption, assuming that such a purchase is within the power of a city or town. What the parties contemplate and manifestly intend is a sale by the owners and a purchase by the city of the lands in question, and the arrangement, which has been entered into, has been made, it is plain, for the purpose of evading, if possible, the obstacle interposed by the statutes in regard to municipal indebtedness. It is expected and intended that the city shall ultimately pay the mortgages. Otherwise the arrangement so far as the owners are concerned is a singular one. They receive $24,000 in cash and they bind themselves to pay $202,000 on property which is assessed for $33,800. The transaction is in substance and effect a purchase of the lands by the city for the sum of $226,000, of which it pays $24,000 in cash and is to pay the rest in three years with

interest with the privilege of paying it sooner if it desires. It is true that no action could be maintained against the city for the balance of the purchase price and that in that sense the city would not be indebted for such balance. But the property when conveyed will be subject to the mortgages that have been placed upon it pursuant to the arrangement that has been made, and the city either will have to pay them or submit to have the property taken from it by foreclosure proceedings. It will thus become indirectly liable for the amount secured by the mortgages, and the taxpayers will ultimately be obliged to pay it as contemplated. In a sense, therefore, it might be said, if this arrangement were carried out, that the city would be indebted for the sums secured by the mortgages. Certainly no account of its assets and liabilities would be correct which omitted this property from the one and the amount for which it was mortgaged from the other. Moreover, there is authority for the proposition that if the city had itself mortgaged the property and had stipulated in the mortgages that it should not be liable, but that the mortgagees should look to the land alone, such a transaction would be within the prohibition of the statute and would not be upheld. *Baltimore* v. *Gill*, 31 Md. 375. *Earles* v. *Wells*, 94 Wis. 285.

The object of the statute is to protect the taxpayer by confining the indebtedness of the city within a prescribed limit. The manner in which the indebtedness is created is immaterial if the result is to subject the city to a present liability direct or indirect which the taxpayers eventually will be called on to meet. It seems to us that such will be the result of the ingenious scheme that has been devised in the present case. We think that the statute cannot be evaded in the manner proposed. See *Ironwood Water-Works Co.* v. *Ironwood*, 99 Mich. 454; *Baltimore* v. *Gill, ubi supra; Newell* v. *People*, 3 Selden, 9; *Reynolds* v. *Waterville*, 92 Maine, 292; *Earles* v. *Wells*, 94 Wis. 285.

*Decree for petitioners.*

*N. Matthews, Jr. & H. L. Harding*, for the petitioners.

*A. J. Bailey*, for the city of Boston and the city treasurer.

*G. R. Nutter*, (*J. G. Palfrey* with him,) for George W. Seaverns, owner of one of the parcels of land.

*G. R. Swasey*, for John F. Callahan and James J. Costello, owners of the other parcels.