THE STATE OF KANSAS, *ex rel.*, etc., v. THE CITY OF . TOPEKA et al.

**No. 13,796.**  (74 Pac. 647.)

SYLLABUS BY THE COURT.

1. CITIES AND CITY OFFICERS—*Election to Vote Water-works Bonds.* A petition asking the mayor of a city to issue a proclamation for an election to vote bonds to be used in the purchase of a system of water-works need not be submitted to the city council.

2. ———— *Purchase of Water-works Subject to Encumbrance.* A city may purchase a system of water-works subject to an encumbrance payable in the future.

3. ———— *Petition and Proclamation for an Election to Vote Water-works Bonds Held Sufficient.* Petition and proclamation for a city election to vote bonds to be used in the purchase of a system of water-works, which specifically mention the statute under which the bonds are to be issued, but fail to state the denomination, rate of interest, or maturity, are not void for these reasons when the statute referred to provides that "said bonds shall be issued in denominations of not less than ten dollars nor more than one thousand dollars, and shall run for a period not to exceed twenty years, and shall bear interest at a rate not to exceed six per cent." By reference the statute becomes a part of the petition and proclamation. The council may issue the bonds in any denomination, at any rate of interest, and payable at any time, within the limits prescribed in the statute.

4. ———— *Existing Indebtedness not a Condition Precedent to Voting Bonds.* An existing indebtedness or obligation on the part of a city is not a necessary condition precedent to its power to vote bonds to be used in the purchase or construction of a public utility.

12—68 KAN.

5. ACT OF LEGISLATURE—*Publication.* A general act which provides that it shall take effect and be in force from and after its publication in the "official city paper" will become operative from and after its publication in the official state paper, notwithstanding such provision.

6. ELECTIONS—*How to Determine the Number of Votes Cast on a Proposition.* To ascertain how many votes are cast upon a proposition, in the absence of fraud or mistake, the number of legal and countable ballots found in the ballot-box at the close of the polls, upon which the voter has intelligently expressed himself, is primarily determinate of the question.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed December 12, 1903. Affirmed.

*C. C. Coleman,* attorney-general, *Otis E. Hungate,* county attorney, and *Garver & Larimer,* for plaintiff in error.

*Charles F. Spencer,* city attorney, and *J. D. McFarland,* for defendants in error.

The opinion of the court was delivered by

GREENE, J.: J. T. Clark sought to enjoin the city of Topeka from purchasing a system of water-works subject to an encumbrance not payable for more than twenty years, and from issuing its bonds in payment of such water-works subject to the encumbrance. The cause was tried in the court below upon the pleadings and an agreed statement of facts. The injunction was denied and the plaintiff prosecutes error. After the cause was submitted to this court the parties agreed that the state be made plaintiff, and the proceedings were so amended and the state substituted for Clark as plaintiff in error.

The mayor of Topeka, upon the presentation of a petition and without consulting the council, issued his proclamation calling an election at which the question of voting bonds to be used in the purchase of a system

of water-works was submitted. It is contended that
the mayor of a city of the first class has no authority
to issue a proclamation calling for an election to vote
upon the question of issuing bonds with-
out first having the sufficiency of the pe-
tition therefor passed upon by the coun-
cil. In support of this contention, reference is made
to section 721, General Statutes of 1901, being section
5 of the general charter act of cities of the first class
(Laws 1881, ch. 37, § 5), which provides that "the
power hereby granted shall be exercised by the mayor
and council of such city, as hereinafter set forth."

1. Presentation of petition to mayor sufficient.

The contention is that inasmuch as the city did not
act in calling the election, but only the mayor, the
election was without authority and void. It appears
both from the petition and the proclamation that the
city was acting under chapter 82, Laws of 1897, as
amended by chapter 107, Laws of 1901. The pro-
visions of these acts pertinent to an understanding of
the questions presented in this case are sections 8 and
10, chapter 82, Laws of 1897, and section 1, chapter
107, Laws of 1901, which read :

"SEC. 8. That all cities of the first, second and
third class of the state of Kansas are hereby granted
full power and authority on behalf of such cities to
purchase, procure, provide and contract for the con-
struction of, and to construct and operate, . . .
water-works . . . for the purpose of supplying
such cities and the citizens thereof with water. . . ."

"SEC. 10. On presentation of a petition signed by
two-fifths of the resident taxpayers of any such city as
shown by the last assessment roll, the acting mayor of
such city shall issue a proclamation for a city election
to be held . . . for the purpose of submitting to
the electors of such city a proposition to issue bonds
of such city for any and all purposes mentioned. . . ."
(Gen. Stat. 1901, §§ 660, 662.)

Section 1, chapter 107, Laws of 1901, reads :

". . . That for any and all indebtedness created for any of the purposes mentioned in section 8 of this act any city of the first, second or third class is hereby granted full power and authority to issue and sell bonds of the city to an amount equal to said indebtedness, . . . and such bonds shall not be issued in amounts to exceed twenty per cent. of the assessed value of such city as shown by the last preceding assessment. Said bonds shall be issued in denominations of not less than ten dollars nor more than one thousand dollars and shall run for a period not to exceed twenty years, and shall bear interest at a rate not to exceed six per cent. per annum, payable semi-annually, and may be used in payment of the purchase or construction of a plant or plants. . . ." (Gen. Stat. 1901, § 661.)

Chapter 82 of the Laws of 1897 was passed for the express purpose of authorizing cities to obtain such utilities as light, heat and water, either by contracting with private corporations to furnish the same or by purchase or construction. It appears from this act that it was the intention of the legislature to embody all provisions necessary to enable citizens to secure these utilities in either of the ways designated. They are authorized by section 8 of the Laws of 1897 to contract with private corporations to furnish such utilities or to purchase or construct plants for such purpose. Section 1, chapter 107, Laws of 1901, amending section 9, chapter 82, Laws of 1897, authorizes cities to issue bonds to pay the indebtedness incurred in obtaining such utilities either by purchase or construction, and section 10, chapter 82, Laws of 1897, provides in what manner the question of voting bonds therefor shall be submitted to the electors of the city.

It will be observed there is no requirement that the petition for an election proclamation shall be presented

to, or passed upon by, the council.  The provision is that "on presentation of a petition signed by two-fifths of the resident taxpayers of any such city as shown by the last assessment roll, the acting mayor of such city shall issue a proclamation for a city election. . . . ." The act provides that the mayor shall issue the proclamation, but contains no provision that the petition shall be presented to, or acted upon by, the council. In case the mayor refuse, mandamus would lie to compel him to act, and in such proceeding the council could not be involved.  The rule is that where an act has reference to a particular subject, and prescribes the procedure to be adopted in carrying the purpose of the act into effect, the law is satisfied if such procedure be followed.

A second contention is that cities of the first class have no power to purchase property subject to an encumbrance or lien to be impressed with a public trust.  This contention is not based upon any law directly prohibiting such transactions, but is deduced from the law that a city cannot mortgage or give a lien upon such property.  We think the authorities well sustain the contention that unless expressly so authorized a municipality cannot mortgage or encumber property impressed with a public trust.  That water-works owned by a city belong to that class of public property is undeniable.  Conceding that the city of Topeka could not give a lien upon its water-works to secure the purchase-price, is it a fair deduction therefrom, in view of our statute, that it could not purchase such works subject to an encumbrance payable in the future?

Neither counsel for plaintiff nor those for defendants, in their very able presentation of this case, have cited us to any case where this precise question has

*2. May purchase subject to encumbrance.*

been involved and determined, and we have been unable to find one exactly in point.

Cities are the agents of the state in the administration of government and possess such powers as are specifically delegated, and such other powers necessary and incidental thereto which will enable them effectually to perform the duties imposed by the legislature as departments of government. In determining what duties are imposed and what powers are conferred the statute should be liberally construed, to effectuate the general purpose of the legislature.

The provision of section 8, *supra*, is "that all cities of the first, second and third class . . . are hereby granted full power and authority on behalf of such cities to purchase, procure, provide and contract for the construction of, and to construct, . . . water-works." In the performance of this purely business trust no inhibition is imposed. They are circumscribed by no restriction, but are left free to exercise their best business judgment. They may contract to have water supplied by private corporations for any term of years and at any rate that seems to them to be for the best interests of the citizens. In contracting for the construction of water-works they may determine the amount to be expended, and the time and manner of payment, as freely as an individual. In the construction of such works they may enter into an agreement with material-men and contractors, or they may employ a superintendent and day-laborers and construct such works under their own general supervision. Whichever course they pursue, they are at liberty to exercise their judgment for the best interest of the people. The legislature apparently intended that cities should be free to make the best contract possible in obtaining public utilities. Possessing this

unrestricted power in the performance of a purely business transaction, we think cities may make the most advantageous contract possible.  If they find that water-works which are encumbered can be bought at an advantage, it is within their power to contract therefor.

In support of its contention plaintiff in error cites several cases.   In *Browne v. Boston,* 179 Mass. 321, 60 N. E. 934, it appeared that the city of Boston was desirous of acquiring certain lands adjacent to lands already owned by it, the price of which was $226,000. Under a statute restricting the indebtedness of the city, its borrowing capacity was a little in excess of $24,000.   An agreement was entered into between the city and the owner of the land that he should mortgage the land for $202,000, and the city would buy from him for $226,000, paying $24,000 and taking the property subject to the mortgage.   In an action to enjoin the city from carrying out this contract, it was held that it was an attempt to evade the law limiting its indebtedness, and the injunction was sustained.

In *Water-works Co. v. City of Ironwood,* 99 Mich. 454, 58 N. W. 371, the same principle was involved as in *Browne v. Boston,* supra.   The court held that it was an attempt on the part of the city to evade the law limiting its indebtedness and that the contract was not enforceable.   In the syllabus it was said : "Municipal corporations cannot avoid restrictions upon the amount of indebtedness they may incur by purchasing property for public purposes subject to liens."

The case of *The Fidelity Trust and Guaranty Co. v. Fowler Water Co.,* 113 Fed. (C. C.) 560, was an action in equity to foreclose a deed of trust executed by the Fowler Water Company to secure the payment of bonds issued by it to the amount of $30,000.   It ap-

pears that the town of Fowler granted a franchise to the Fowler Water Company to erect a system of water-works and to furnish water to the town, under an ordinance by which it was agreed that, in order to obtain money to erect the water-works, the company might mortgage such plant for $30,000. This ordinance also contained a provision that the company should not alienate the same, except to the town of Fowler, within one year from the date of the completion of the works, and that the town might purchase them within a period of thirty days after the same had been tested and accepted by the town; that certain hydrant rentals should be paid by the town semiannually, and in case the water company should encumber the property to secure an issue of bonds not exceeding $30,000 the town would pay such hydrant rentals directly to the trustee named in the mortgage. The town exercised its option and purchased the works subject to the encumbrance. Default having been made by the town in the payment of hydrant rentals, the trustee brought action against the water company to foreclose the deed of trust. It was contended that, when the ordinance was passed granting the franchise, the town of Fowler was financially unable to purchase or construct water-works, and the contract with the water company was in pursuance of a scheme to evade the constitutional provision forbidding the town to create an indebtedness in excess of two per cent. of the taxable property. It is true that in subdivision four of the syllabus the court held that a town could not purchase water-works subject to an encumbrance. This question, however, was not involved and its determination disposed of no question in controversy. All plaintiff sought was a foreclosure of his trust deed against the

water company, and for this purpose the town was a necessary party only because it held the legal title to the property. Whether the ordinance was void or the agreement between the town and water company a scheme to evade the constitutional provisions, or whether the town could purchase such property subject to an encumbrance, were not questions involved in determining the plaintiff's right to foreclose his trust deed on the tangible property owned by the water company and covered by his deed of trust.

It is also contended that the petition upon which the proclamation was issued and the proclamation were fatally defective in that neither

3. Petition and proclamation held sufficient.

stated the denomination of the bonds to be issued, the rate of interest, when payable, or what property it was intended to purchase with the proceeds. The petition stated that it was presented

"pursuant to the provisions of chapter 82 of the Session Laws of 1897 of the legislature of the state of Kansas, as amended by chapter 107 of the Session Laws of 1901 of the legislature of the state of Kansas, to issue a proclamation for a city election, for the purpose of submitting to the electors of said city a proposition to issue the bonds . . . to be used in payment of the purchase of the water plant furnishing water in the city of Topeka."

The proclamation contained the same recitals. Section 1, chapter 107, Laws of 1901, provides that "said bonds shall be issued in denominations of not less than ten dollars nor more than one thousand dollars, and shall run for a period not to exceed twenty years, and shall bear interest at a rate not to exceed six per cent. per annum, payable semi-annually." The voters knew of these statutory provisions, and in exercising their right of franchise

did so in view of them, intending to leave the minor details to be determined by the council. The provisions of the statute by reference became part of the petition as well as part of the proclamation. In this respect both were sufficient. According to the agreed statement of facts, there was but one water plant in Topeka furnishing water. Both the petition and proclamation stated that the bonds were to be used in the purchase of the water plant furnishing water to the city of Topeka. The court below ruled correctly on the objection raised. This description of the property intended to be purchased was sufficient to inform the voter.

It is also contended that both chapter 82, Laws of 1897, and chapter 107, Laws of 1901, were repealed by chapter 122, Laws of 1903, before the election was held at which the bonds were voted. The petition requesting the mayor to issue an election proclamation was presented, and the proclamation issued, March 4, 1903. The election was called and held April 7, 1903. Chapter 122, Laws of 1903, went into effect March 18, 1903. This act concerns cities of the first class, and specifically repeals chapter 82, Laws of 1897, and all acts amendatory and supplemental thereto, in so far as the same apply to cities of the first class. Section 200, however, reads:

3a. Not affected by act of 1903.

"The passage of this act shall in no way affect any bond heretofore issued, contract entered into for any public building, pavement, or sewer, tax or special assessment levied, action now pending, or proceeding of any kind commenced and not completed, by or on behalf of any city."

The contention is that the action taken by the city to vote the bonds before the passage of chapter 122,

Laws of 1903, was not a "proceeding," and therefore not within the saving clause of the act.  It is urged that the word "proceeding" has been judicially interpreted by this court to apply only to judicial proceedings.  (*Gordon v. The State, ex rel.*, 4 Kan. 489.) This interpretation was given to the expression as used in section 7342, General Statutes of 1901.  It was not, however, determined that the term could not be used to apply to other proceedings.  In section 200, chapter 122, Laws of 1903, the legislature had in mind, and spoke directly with reference to, proceedings which had been taken by cities prior to the adoption of that act in the administration of governmental duties under previously existing laws, and specifically excepted from its operation all bonds issued, contracts entered into, special assessments levied, actions pending, and all proceedings of any kind commenced and not completed by or on behalf of any city under such laws.  The legislature used the expression "proceeding of any kind commenced and not completed, by or on behalf of any city" with reference to the subjects then under consideration.  The act does not treat of judicial proceedings but of the organization, powers and duties of cities of the first class, and particularly of issuing bonds and the erection of public improvements, and it was to protect proceedings of this character commenced under previously existing laws that the saving clause was enacted.

Another contention is that the bonds were illegally voted, because at the time of the election no indebtedness had been contracted by the city for water-works. An existing obligation on the part of a city is not a necessary condition precedent to the voting of bonds.  Chapter 107, Laws of 1901, makes the existence

4. Existing indebtedness not a condition precedent.

of an indebtedness a condition precedent to the issuance of such bonds, but there are no provisions which declare that the liability must exist before bonds are voted.

It is also contended that chapter 107, Laws of 1901, under which the bonds were voted, never became operative for want of publication. Section 3 of the act provides "that this act shall take effect and be in force 5. Publication of from and after its publication in the official city paper." It was stipulated on the trial that the act in question was published in "*The Mail and Breeze*," the official state paper. It was also published in the statute-book. Section 19, article 2, of the constitution, provides :

"The legislature shall prescribe the time when its acts shall be in force, and shall provide for the speedy publication of the same ; and no law of a general nature shall be in force until the same be published."

Section 6750, General Statutes of 1901, provides :

"All acts of the legislature which shall provide for their taking effect on publication in any newspaper shall be published in the official state paper, which shall be deemed the official publication."

The act in question provides that it shall take effect and be in force from and after its publication in "the official city paper." This violates no provision of the constitution. Under section 6750, if the act was published in the official state paper such publication is all that is required. From and after such publication the act became operative, notwithstanding the provision that it should become operative after its publication in "the official city paper."

It is also contended that a majority of the votes cast at the election were not in favor of issuing bonds. In determining how many votes are cast at an election

The State v. Topeka.

6. Method of determining number of votes cast.
upon any given proposition, in the absence of fraud or mistake, the number of legal countable ballots found in the ballot-box at the close of the polls, upon which the voter has intelligently expressed himself, is determinate of the question.  Ballots which are illegally cast, or which for any reason are so defective that they should not be counted, and ballots upon which the voter has not expressed himself upon the particular proposition, should not be counted in determining the number of votes cast upon that question.  Applying this rule, it plainly appears from the agreed statement that a majority of the electors voting were in favor of issuing the bonds.

The judgment of the court below is affirmed.

All the Justices concurring.