The Honorable Jim Barone State Senator, 13th District 611 W. Leighton Frontenac, Kansas 66763
Dear Senator Barone:
You request our opinion regarding issues related to the authority of a unified school district. Specifically, you ask whether a unified school district is authorized to issue Quality Zone Academy Bonds and whether a unified school district may grant a security interest in personal or real property owned by the school district.
Authority of a School District to Issue Quality Zone Academy Bonds
Qualified Zone Academy Bonds (QZABs) are recognized through a provision of the United States tax code.[1] The proceeds raised through QZABs may be used to pay the costs of qualified purposes.
 "The term 'qualified purpose' means, with respect to any qualified zone academy---
 "(A) rehabilitating or repairing the public school facility in which the academy is established,
"(B) providing equipment for use at such academy,
 "(C) developing course materials for education to be provided at such academy, and
"(D) training teachers and other school personnel in such academy."[2]
The holder of a QZAB receives tax credits from the federal government rather than interest payments from the qualified zone academy,[3]
thereby providing to a unified school district a source of interest-free financing.[4] While "the legislation references the word bond at numerous places, the operative language only requires a loan instrument to be developed to support the Qualified Zone Academy Bond."[5] For example, QZABs may be used in a lease-purchase arrangement.[6]
The board of education of a unified school district is authorized to equip, furnish, repair or remodel school facilities[7] and to purchase textbooks,[8] workbooks, materials and supplies used in courses, specialized clothing and towels used in physical education, shop and science courses, and musical instruments for use in band and orchestra.[9] Statutes authorizing such purchases provide discretionary means for paying the costs. One means of paying the costs may be through leases or lease-purchase agreements.[10] Therefore, the board of education of a unified school district may use funds raised through QZABs to pay the costs of qualified purposes described in 26 U.S.C.S. § 1397E.
Authority of a School District to Grant a Security Interest in PublicProperty
General rules regarding the authority of a municipality to mortgage its property are stated in McQuillin:
 "Without special statutory or charter power, as a rule, a municipal corporation has no authority to mortgage or pledge municipal property. It is said that this power is not essential to the declared objectives of the corporation. But under a statute or charter conferring power to hold real and personal property and to convey the same in any manner whatever, and to make all contracts essential for the public welfare, a city has been permitted to mortgage property owned by it. . . .
 "As to private property, however, it would seem that a municipality has the power, in the absence of a statute or charter provision to the contrary, to mortgage or pledge it to secure any obligation that it is authorized to contract.
 "In the absence of a constitutional provision to the contrary, the legislature may authorize a municipal corporation to borrow money on the security of property to be acquired by the proceeds of the loan, even though the property is acquired for a public use."[11]
It is stated in 56 Am.Jur. 2d Municipal Corporations, Counties and Other Subdivisions § 513 (2000):
 "As a general rule, in the absence of legislative authority to do so, a municipal corporation or county is powerless to mortgage or pledge property it owns, and any attempt so to encumber its property is invalid, although there is contrary authority. If the power to mortgage has been statutorily given, such statute may specify the particular property which may be mortgaged.
 "According to some authorities, a statute authorizing a municipal corporation or county to sell and convey real estate does not confer authority to mortgage. The view has also been taken that the power to mortgage is included in the grant of power to purchase, hold, sell, lease, exchange, and dispose of real property, and to make all contracts deemed to be for the welfare of the municipality."
In State v. Topeka,[12] the Kansas Supreme Court reviewed whether a city of the first class had the authority to purchase a waterworks system that was subject to an encumbrance or lien. At the time of the city's action, a city of the first class had authority to lease certain lands,[13] "to purchase and hold real and personal property for the use of the city,"[14] and "to sell and convey any real and personal estate owned by the city, and make such order respecting the same as may be deemed conducive to the interests of the city."[15] Without supporting citations, the Court stated that "the authorities well sustain the contention that, unless expressly so authorized, a municipality cannot mortgage or incumber [sic] property impressed with a public trust."[16]
The Court then focused on the language of the statute that granted to the governing body of cities "full power and authority on behalf of such cities to purchase, procure, provide and contract for the construction of, and to construct . . . water-works."[17] The Court noted that "[i]n the performance of this purely business trust no inhibition is imposed."[18]
 "The legislature apparently intended that cities should be free to make the best contract possible in obtaining public utilities. Possessing this unrestricted power in the performance of a purely business transaction, we think cities may make the most advantageous contract possible. If they find that water-works which are encumbered can be bought at an advantage, it is within their power to contract therefor."[19]
The Court appears to have found a distinction between a city's ability to grant a mortgage or lien in property held in public trust and a city's ability to purchase property that is subject to mortgage. It accepts the general principle that a municipality may not mortgage property held in public trust, but does not require express authority when the municipality attempts to purchase property that is subject to mortgage.
The Legislature has expressly granted certain governmental entities the authority to mortgage, pledge and grant a security interest in real and personal property owned by the entities.[20] The board of education of a unified school district is authorized to purchase,[21] hold,[22]
lease,[23] or lease-purchase[24] real or personal property and to "dispose of the [school buildings and other school properties no longer needed by the school district] in such manner and upon such terms and conditions as the board deems to be in the best interest of the school district."[25] The power is similar to the power that could be exercised by a city of the first class at the time the Court decided State v. Topeka. The board is not expressly authorized to mortgage, pledge, or grant a security interest in real or personal property owned by the school district.
Beginning in 2003, the board of education of a unified school district is authorized to "transact all school district business and adopt policies that the board deems appropriate to perform its constitutional duty to maintain, develop and operate local public schools."[26] "The power granted by [K.S.A. 2004 Supp. 72-8205(e)(1)] shall not be construed to relieve a board from compliance with state law."[27] The power is viewed as a limited grant of home rule powers.[28] In exercising this power, the board may potentially supplement state law, but it may not use it to override state law. It is our opinion that K.S.A. 2004 Supp.72-8205(e) similarly does not authorize the board of education of a unified school district to override longstanding legal principle. Thus, the board of education of a unified school district may not, absent express authority, mortgage or encumber property held in public trust and devoted to a public governmental use or purpose.
In review, the board of education of a unified school district may use the proceeds of a QZAB to pay the costs of qualified purposes described in 26 U.S.C.S. § 1397E. The board of education of a unified school district may not, absent express authority, mortgage or encumber property held in public trust and devoted to a public governmental use or purpose.
Sincerely,
 Phill Kline Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
PK:JLM:RDS:jm
[1] 26 U.S.C.S. § 1397E.
[2] 26 U.S.C.S. § 1397E(d)(5).
[3] A "qualified zone academy" is "any public school (or academic program within a public school) which is established by and operated under the supervision of an eligible local education agency to provide education or training below the postsecondary level if [the qualifications in subsections (i) through (iv) of26 U.S.C.S. § 1397E(d)(4)(A) are met]." 26 U.S.C.S. § 1397E(d)(4).
[4] Dr. Laurence Peters, 2003 QZAB Report A Working Guide To The Qualified Zone Academy Bond (QZAB) Program, Update of the 2002 QZAB report prepared for the U.S. Department of Education, February 2003, p. 3.
[5] Id. at p. 18.
[6] Id.
[7] See K.S.A. 2004 Supp. 72-6760; K.S.A. 72-6761; 72-8801, as amended by L. 2005, Ch. 152, § 25; 72-8804.
[8] See K.S.A. 2004 Supp. 72-4141; 72-7535; K.S.A. 72-8250.
[9] See K.S.A. 72-5389; 72-8250.
[10] See K.S.A. 72-8225.
[11] 10 McQuillin Mun. Corp. § 28.41.
[12] 68 Kan. 177 (1903). We note that this case predates the advent of city home rule authority, but is instructive in its handling of municipalities that do not have constitutional home rule powers.
[13] See Laws 1901, p. 148, ch. 17a, art. 6, § 57.
[14] Laws 1901, p. 162, ch. 18, art. 1, § 3 Second.
[15] Laws 1901, p. 162, ch. 18, art. 1, § 3 Third.
[16] State v. Topeka, 68 Kan. 177, 181 (1903).
[17] Id. at 182.
[18] Id.
[19] Id. at 182-83.
[20] See K.S.A. 12-895(a)(15) (municipal energy agency); 27-331(g) (airport authority); 42-711(g) (irrigation district).
[21] See, i.e., K.S.A. 72-1625; 72-8212(e).
[22] See, i.e., K.S.A. 72-8201.
[23] See, i.e., K.S.A. 72-8157; 72-8225.
[24] See, i.e., K.S.A. 72-8225.
[25] K.S.A. 72-8212(d).
[26] K.S.A. 2004 Supp. 72-8205(e)(1).
[27] K.S.A. 2004 Supp. 72-8205(e)(2).
[28] Michael R. Heim, Home Rule: A Primer, The Journal of the Kansas Bar Association (January 2005).